FILED
2020 Jun-15  AM 09:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DELICIA MORRIS KING** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | |
| **BIRMINGHAM AIRPORT** | ) | **JURY TRIAL DEMANDED** |
| **AUTHORITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## COMPLAINT

## STATEMENT OF JURISDICTION

1.     This is a suit authorized and instituted pursuant to 42 U.S.C. §2000e, et.seq., known as Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); Americans with Disabilities Act, as amended; and the Family Medical Leave Act - 29 U.S.C.A. §2601, et.seq.

2.     This Court has original jurisdiction, pursuant to 28 U.S.C. §1331, as this civil action arises under the laws of the United States cited above.  This Court also has original jurisdiction, pursuant to 28 U.S.C. §1343(a), as this civil action seeks to secure the protection of, and to redress the deprivation of, rights secured by Title VII providing for injunctive and other relief against discrimination and retaliation.

3.    Venue is proper in this district, pursuant to 28 U.S.C. §1391, as all or a substantial part of the events or omissions giving rise to the claims occurred in Jefferson County, Alabama located within this judicial district.

4.    Plaintiff has fulfilled all conditions precedent to the institution of this action, as required under Title VII.

## STATEMENT OF THE PARTIES

5.    Plaintiff King is an individual over the age of nineteen (19) years. King is a resident of the State of Alabama. At all times relevant to this Complaint, King was an employee of the Birmingham Airport Authority.

6.    Defendant Birmingham Airport Authority ("BAA") is an entity subject to suit under the relevant statues this lawsuit is brought.

## STATEMENT OF THE FACTS

7.    Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set forth herein and further state as follows:

8.    Plaintiff King is a female who, at all times relevant to this Complaint, was over the age of 40.  King is a qualified individual under the ADA in that she was "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual

2

holds or desires." 42 U.S.C. § 12111(8). More specifically, King has been diagnosed with depression, anxiety, and PTSD. Together, King's conditions substantially limited major life activities including, but not limited to, brain functionality and her nervous system.

9.   In addition to her own ailments, King had to take care of her husband and granddaughter who both have disabilities and require King to take care of them during certain times. More specifically, King's husband was diagnosed with cardiomyopathy, and her granddaughter was diagnosed with a serious medical condition that required King's assistance as well. Since her daughter's death, King has been the sole caretaker and provider for her minor granddaughter.

10.   Plaintiff King began working for Defendant BAA in 2008 as a temp employee. In January, 2010, King was hired on as full-time, permanent employee of the BAA.

11.   Based on her hard work and dedication, King was promoted to Custodial Supervisor within the Facilities Department in October, 2014.

12.   King was one of three supervisors in the Facilities Department. The supervisors reported to Mike Thompson who was Director of the Facilities Department.

13.   Of the three (3) supervisors in the Facilities Department, King was

the only female.  Indeed, the other two (2) supervisors were 1) Curtis James - Facilities Supervisor; and 2) Barry Jones - Maintenance Supervisor.

14.    Prior to King being made the custodial supervisor, the position duties and responsibilities were actually split among three (3) custodial supervisors.  However, King was assigned all of the duties combined, and she was told that BAA had no plans on hiring any other custodial supervisors.

15.    As custodial supervisor, King supervised and was responsible for more employees than her male supervisor counterparts - Curtis James and Barry Jones.  However, the male supervisors were paid more money than King. BAA set King's pay at $19.00/hr in or near October, 2014 when she assumed the custodial supervisor position that included three shifts with 8 different employees on each shift. $19.00/hr was the same amount one of the three previous custodial supervisors made when they were effectively doing one-third the work and responsibility of King.

16.    King immediately requested more pay based on her increased job duties, assuming a supervisory role that was once held by three different people, and because she was aware that the male supervisors in the Facilities Department were paid more.  When comparing duties and responsibilities, King realized she was doing equal to or more than her male counterparts.  However,

4

BAA refused to increase King's pay.  This pay disparity continued each pay period from October 2014 to King's wrongful termination in July, 2019.

17.    After King requested more pay to better reflect her duties and responsibilities and to be on par with the male supervisors, King experienced retaliation from her Director, Mike Thompson.  More specifically, Thompson began to speak very rudely and abrasive toward King in private and in front of others, including King's subordinate employees.  Thompson's actions caused King to be humiliated, embarrassed and many times frightened.

18.    Thompson's aggressive attitude toward King continued on a weekly basis and only seemed to grow worse.  A few months later, Thompson gave King negative marks on her annual evaluation. The negative marks adversely affected the pay increase King would receive and have an adverse impact on promotional opportunities.  As a result, King was forced to appeal her 2014 evaluation and had her scores changed after she was able to provide supporting documentation to show Thompson was acting in a retaliatory manner.  Then, in 2015, Thompson did not give King an evaluation in an attempt to again adversely impact her employment, including pay and promotional opportunities.

19.    As a result, King felt she had no choice but to report Thompson to BAA's legal counsel in April, 2016. In fact, King made BAA counsel aware that she

5

was sexually harassed by a man at work and the situation had left King with mental anxiety. Despite King's complaint and letting BAA know of the mental anxiety she has, nothing was done to help.  No accommodations were discussed at all as a possible way to remediate the issue, including potential transfer of King from under Thompson's supervision. Nothing was done to improve the situation.  Instead, things only grew worse after BAA informed Thompson of King's complaint against him. Because King realized that she would get no assistance from BAA, she attempted to avoid Thompson unless necessary to perform the functions of her position or as was required by Thompson or other leadership. However, King walked on egg shells on a weekly basis through the end of her employment.

20.    In or near August, 2018, one of King's subordinates, Danielle Williams became increasingly insubordinate and began to continually call King "Momma D" and make comments about her age, including but not limited to, "you're old", "you could be our grandma", and "you're old enough to be our mommas". Williams' comments occurred on a near daily basis. King always told Williams to not talk to her in that manner.  However, when King told Williams to not speak to her that way, she would become hostile and argue with King.

21.    King reported Williams' insubordinate and disrespectful behavior

to management, including Facilities Director Mike Thompson.  Both Thompson and King met with Williams to discuss her behavior in late August, 2018. However, Williams behavior continued. Throughout September, 2018, King continually reported Williams to management but nothing was done.

22.    Because nothing was done, King's interactions with Williams' only grew worse.  In late September, 2018, during another insubordinate instance, Williams openly argued with King and then hit her with a cart while King was attempting to train her in a restroom.

23.    King immediately reported the physical assault to the BAA and they conducted an investigation ,which lasted more than five (5) months, with no feedback or updates to King.  During the time the investigation was taking place, King was forced to report Williams several more times due to other employee complaints and customer complaints about her including in October, 2018 for stealing a sandwich from a bagel store, and other reports of serious infractions in January, 2019 and March, 2019.

24.    As a result of the ongoing incidents, in October, 2018, King was advised to apply for FMLA leave based on her PTSD, mental anxiety and depression which was being exacerbated by Williams. King submitted all required documentation to BAA including the medical certification showing the

7

disabilities King was diagnosed with.

25.    After the first week of March, 2019, Williams was given a final written warning but not for the cart incident.  Instead, it was for an incident caught on camera in January, 2019, where Williams was aggressively arguing with King and pursing King as she attempted to walk away from a clearly hostile Williams.    Williams was also given other write-ups related to other insubordinate events she had with King in the interim.  However, she was not terminated despite her numerous violations nor was she transferred to a different department after assaulting her supervisor.

26.    In April, 2019, Williams was arrested on the job for the assault through a warrant based on King's complaint with the Birmingham Police over the cart assault. After her arrest, Thompson made King place Williams on "paid" leave. King felt this was a slap to her face.  After everything she had went through with this young lady and the documented instances of insubordination, physical assault, threats, stealing and various other infractions, Williams was effectively placed on vacation.  The BAA kept Williams on paid leave for almost four (4) months until July 26, 2019 when they brought her back to work, less than a week after King was wrongfully terminated on July 19, 2019.  BAA's actions and inaction ratified and condoned the discriminatory and insubordinate behavior

of Williams toward King.

27.    When the male supervisors had issues with employees, the issues were immediately taken care of, but that was not the case for King.  Indeed, Thompson ensured that the male supervisors had many added benefits over King. More specifically, as a supervisor, King was not allowed to terminate her employees; King was not allowed to sit in on interviews or have a voice on who worked on her team despite having the most employees reporting to her (approximately 42 employees reported directly to King in 2019 across three (3) different shifts); and King was always forced to work with a shortage of employees.   However, the male supervisors were allowed to terminate employees, sit in on interviews to make decisons and were given the resources they needed to be successful in their work, including enough employees.

28.    Additionally, King would get continual investigations started against her for any small reason or even complaints from employees who were not happy because they received disciplinary action, but King's male counterparts would not be investigated or disciplined although they would do the same things King did.

29.    King complained to Thompson on at least a weekly basis that she was not getting the support she needed but nothing was ever done.  Actually,

shortly after King complained, her shift was unilaterally changed to second shift, which is known to be the least desirable shift. King believed the shift change to be retaliatory. All of upper management was noticeably more hostile toward King after she began engaging in protected activity.

30.    In late May or early June, 2019, King turned in FMLA paperwork to BAA due to her legal guardianship over her granddaughter who has disabilities. The paperwork stated that King would need leave accommodations to assist her granddaughter when necessary as it related to her disabilities. The FMLA paperwork was complete and medically certified.

31.    Although King should have received her 2018 evaluation in March, 2019, it was given to her by Thompson during the 2nd week of June, 2019, shortly after King had made BAA and Thompson aware of her FMLA needs for her granddaughter. Thompson knew that the performance evaluations were tied to pay increases. His act of withholding King's evaluation for three (3) additional months caused more delay in any potential raise she may have received.

32.    When Thompson gave the evaluation in June, 2019, he gave King an adverse mark of "NI" or needs improvement for absences and punctuality. Additionally, Thompson attempted to place King on a sixty (60) day probation called an Employee Development Plan ("EDP") as a result. While on probation,

10

King would be under an intense microscope and it would be easier for Thompson to terminate King.  However, King did nothing to be placed on probation and immediately knew she was once again experiencing retaliation. More specifically, King was being retaliated against for alerting BAA of her need for FMLA leave.

33.     Tellingly, in the comments section for absences on the evaluation, Thompson's explanation for the low marks was that "Delicia has missed many days due to illness, family illness and emergency." Thompson was well aware that if he gave Delicia "needs improvement" marks, he could then place her on probation, a clearly punitive measure, and he would be able to more easily terminate her.

34.     King immediately asked why she received the negative marks on her evaluation when she did not have an excessive amount of unexcused absences. Thompson was unable to explain his reasoning and told King he would get back with her. Because this was not the first time Thompson had attempted to retaliate against King by way of performance evaluations, King was saddened it was continuing but not surprised. King requested which days Thompson relied on to give her the negative marks.  King did not hear anything more until mid-July, 2019, when Thompson provided King a response that detailed the days he considered when he gave the lesser marks.

11

35.     However, Thompson's mid-July, 2019 response was unavailing and only served to further demonstrate the retaliation against King. Indeed, just about every day King relied on to penalize King had been cleared by him or the BAA for excused, intermittent leave under the FMLA.  The fact that Thompson now attempted to use the FMLA absences and tardies against King was blatant retaliation and interference of King's FMLA rights. Indeed, King was fully eligible for FMLA and BAA is an entity covered by the FMLA.

36.     Additionally, while King was waiting on Thompson's response, she submitted additional FMLA paperwork in late June, 2019, to help care for the serious medical needs and disabilities of her husband.  This was not the first time King requested FMLA to care for her husband. In fact, the first time King alerted the BAA about her husband and his serious medical condition was in 2010.

37.     On July 19, 2019, mere days after Thompson's response to King concerning her evaluation, and her FMLA protected activity, King was terminated.

38.     The reasons given for King's termination were clearly pretext. The real reason was retaliation. King was told the reason for her termination was she did not promote a positive work environment. However, she had just received her evaluation that said she promoted positive and cooperative work

environment. In fact, over 10 years of employment with BAA, King had never received disciplinary action that would warrant termination.

39.     Within one week of terminating King, BAA recalled Danielle Williams back to work.

40.     At no time did BAA attempt to work with King as it relates to accommodation based on her or her family member's disabilities and serious medical conditions in violation of the ADA. Further, each time King attempted to exercise her rights under the FMLA she suffered retaliation which ultimately ended up in her termination.

**COUNT I**
**Disparate Treatment**
**Title VII/Gender Discrimination -  42 U.S.C. §2000e, et.seq.**

41.     The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

42.     Plaintiff was a female who performed her job at or above expectations.

43.     However, Plaintiff was treated differently than her male counterparts solely because she is a female.

44.     Defendant is directly liable for the actions and/or inactions of its

managers and agents.

45.    As a result of Defendant's actions, Plaintiff has suffered extreme harm including, but not limited to, loss of employment opportunities, denial of wages, compensation and other benefits and conditions of employment, as well as other monetary damages.  Additionally, Plaintiff has suffered injury including pain, humiliation, mental anguish and suffering and loss of enjoyment of life.

## COUNT II
## Failure to Accommodate
## Title I Americans with Disabilities Act

46.    The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

47.    Plaintiff was a qualified individual under the ADA in that she was "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

48.    Plaintiff made BAA aware of her disabilities and need for accommodations in 2016 and also in October 2018.

49.    Despite its knowledge, BAA failed to accommodate King although it would not have been an undue hardship.

50.     As a result of Defendant's actions, Plaintiff has suffered extreme harm including, but not limited to, loss of employment opportunities, denial of wages, compensation and other benefits and conditions of employment, as well as other monetary damages.  Additionally, Plaintiff has suffered injury including pain, humiliation, mental anguish and suffering and loss of enjoyment of life.

**COUNT III**
**Associational Discrimination**
**Title I of the Americans with Disabilities Act**

51.     The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

52.     King made BAA aware that she needed accommodations to care for both her husband and granddaughter who both have disabilities and serious medical conditions.  However, BAA failed to accommodate King and instead penalized her for coming to work late, and missing days for medical reasons.

53.     Accommodating King would not have caused an undue hardship to BAA.

54.     Defendant is directly liable for the actions and/or inactions of its managers and agents.

55.     As a result of Defendant's actions, Plaintiff has suffered extreme

harm including, but not limited to, loss of employment opportunities, denial of wages, compensation and other benefits and conditions of employment, as well as other monetary damages. Additionally, Plaintiff has suffered injury including pain, humiliation, mental anguish and suffering and loss of enjoyment of life.

**COUNT IV**
**FMLA Interference**
**29 U.S.C.A. §2601, et.seq.**

56.     The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

57.     The FMLA makes it illegal "for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

58.     Plaintiff, at all times relevant to this Complaint, was an eligible employee for FMLA purposes in that she worked 1250 hours or more the preceding year.

59.     At all times relevant to this Complaint, Defendant was a covered employer that engaged in or affected commerce and employed 50 or more employees.

60.     Plaintiff made Defendant aware that she, her grandchild and her

husband had serious medical conditions.  However, BAA interfered by giving Plaintiff lower marks and attempting to place her on probation for utilizing FMLA to care for herself and family.

61.     Defendant is directly liable for the actions and/or inactions of its managers and agents.

62.     As a result of Defendant's actions, Plaintiff has suffered extreme harm including, but not limited to, loss of employment opportunities, denial of wages, compensation and other benefits and conditions of employment, as well as other monetary damages.  Additionally, Plaintiff has suffered injury including pain, humiliation, mental anguish and suffering and loss of enjoyment of life.

## COUNT V
## FMLA Retaliation
## 29 U.S.C.A. §2601, et.seq.

63.     The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

64.     Plaintiff, at all times relevant to this Complaint, was an eligible employee for FMLA purposes in that she worked 1250 hours or more the preceding year.

65.     At all times relevant to this Complaint, Defendant was a covered

17

employer that engaged in or affected commerce and employed 50 or more employees.

66.     Plaintiff received negative marks on her evaluation for using FMLA leave.   The negative marks adversely affected Plaintiff by lessening her opportunity for promotion and a higher pay raise.   Plaintiff complained that she believed it was retaliation in that the days she missed were FMLA related.

67.     Plaintiff was terminated days after her supervisor gave a flawed response to Plaintiff's serious claim of retaliation for engaging in protected activity.

68.     Defendant is directly liable for the actions and/or inactions of its managers and agents.

69.     As a result of Defendant's actions, Plaintiff has suffered extreme harm including, but not limited to, loss of employment opportunities, denial of wages, compensation and other benefits and conditions of employment, as well as other monetary damages.  Additionally, Plaintiff has suffered injury including pain, humiliation, mental anguish and suffering and loss of enjoyment of life.

**PRAYER FOR RELIEF**

**WHEREFORE,**  Plaintiff respectfully prays that this Court will assume jurisdiction of this action and, after trial, provide relief as follows:

1.      Issue a declaratory judgment that the employment practices, policies, procedures, conditions and customs that led to the discrimination and retaliation by Defendant are violative of the rights of Plaintiff as secured by, where applicable, Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, the Family Medical Leave Act, and the Americans with Disabilities Act.

2.      Grant Plaintiff a permanent injunction enjoining Defendant, their agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, the Family Medical Leave Act, and the Americans with Disabilities Act.

3.      Enter an order requiring Defendant to make Plaintiff whole by awarding Plaintiff back-pay (plus interest), reinstatement or front-pay in lieu thereof, compensation for loss of wages and benefits, lost seniority, and pension benefits and nominal, compensatory and punitive damages.

4.      Plaintiff further prays for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees, and expenses incurred by this ligation.

5.      Plaintiff has no plain, adequate, or complete remedy at law to redress

the wrongs alleged in this suit, and this action for injunctive, declaratory and

other relief, is his only means of securing adequate relief.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON
ALL ISSUES TRIABLE BY JURY**

Respectfully submitted,

 /s/Sidney Jackson
Samuel Fisher
Sidney M. Jackson
*Attorneys for the Plaintiff*
**WIGGINS, CHILDS, PANTAZIS, FISHER & GOLDFARB, LLC**
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
sjackson@wigginschilds.com
sfisher@wigginschilds.com

**Notice of Lawsuit and Request for Waiver of Service to Be Sent by Certified Mail to the Following:**

Birmingham Airport Authority